**STATE of Missouri, Respondent,**

v.

**Willie REECE, Appellant.**

No. 57039.

Supreme Court of Missouri,
Division No. 1.

Feb. 11, 1974.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Assist. Atty. Gen., St. Louis, for respondent.

Joseph L. Leritz, St. Louis, for defendant-appellant.

HIGGINS, Commissioner.

Willie Reece, with prior conviction, was charged with driving, operating, and using a motor vehicle without permission of the owner. He was convicted by a jury and the court assessed his punishment at five years' imprisonment. Sentence and judgment were rendered accordingly. §§ 556.-280, 560.175, 560.180, RSMo 1969, V.A.M.S. (Appeal taken prior to January 1, 1972.)

Appellant does not question the sufficiency of evidence to sustain his conviction; and the evidence would permit the jury to find: that around midnight, in the early hours of January 20, 1971, Irene Livingston parked her husband's 1967 Oldsmobile in front of their house; that about fifteen minutes later she noticed it was gone; that she called her husband, Sylvester Livingston, and he notified the police of his missing automobile; that about 2:45 a. m., Officer George Fagg observed the Livingston automobile being operated at high speed west on Washington Avenue between Garrison and Cardinal Avenues, St. Louis, Missouri; that Officer Fagg gave chase, the automobile turned into Cardinal Avenue and stopped; that the single occupant and driver, defendant Willie Reece, got out of the car and started walking away, and Officer Fagg arrested him; that defendant told Officer Fagg he did not know whose car he had been driving but that he did not steal it; that Mr. Livingston identified his car at Ninth District police station; that at that time the ignition switch had been pried from the dash and the ignition wires crossed underneath the dash; that neither Mr. nor Mrs. Livingston had given defendant permission to drive their automobile. Such evidence made a case of driving, operating, and using a motor vehicle without permission of the owner. § 560.175, supra; State v. Crawley, 478 S.W.2d 344 (Mo. 1972).

Appellant charges the court erred in failing to sustain defendant's motion for continuance.

This contention arises in this context: On May 4, 1971, about 1:30 p. m., defendant's attorney, Joseph L. Leritz, accompanied by Deputy Sheriff Campbell, duly served subpoenas on McKinley Judnary, Mary Crimens, and Dorothy Nichols, directing their presence as witnesses in court at 9:00 a. m., May 5, 1971. The witnesses failed to appear as directed and, at 1:30 p. m., prior to presentation of evidence to the jury, defendant's attorney moved "for a mistrial and continuance of this case so I can have an opportunity to bring these witnesses in to testify for the defense." Counsel advised that if the witnesses were present McKinley Judnary would testify that on the evening in question he played cards with defendant at 3916 Westminster and he left sometime after midnight with a person unknown to the witness; Mary Crimens would testify that she was present when defendant, Judnary, and others were playing cards and defendant left after midnight with a person unknown to the witness; Dorothy Nichols would testify that she observed defendant leaving 3916 Westminster at 1:00 or 1:30 a. m.

Appellant argues that the testimony of the defaulting witnesses was "crucial" to his case, and that the requested continuance would have caused a minimum of inconvenience in this day-and-a-half trial. Appellant concedes that defendant was not charged with stealing the automobile from the Livingston home; nevertheless, he argues it was essential that defendant establish his whereabouts at the time of the taking between midnight and 12:15 a. m.,

and his missing witnesses were the only persons who could place defendant at 3916 Westminster when the Livingston car was being stolen from 3834 Windsor Place.

An application for continuance of a criminal case is addressed to the discretion of the trial court. Rule 25.08, V.A.M.R. Appellate courts will not interfere with an exercise of that discretion unless such discretion has been abused, and this rule applies where the continuance is sought to enable defendant to produce absent material witnesses under subpoena. State v. Scott, 338 S.W.2d 873, 876[4] (Mo.1960). In this connection, a conviction will not be set aside unless it is reasonably probable that a different result would have obtained if the absent witnesses had testified. State v. Cochran, 147 Mo. 504, 49 S.W. 558, 562 (1899); State v. Kindred, 148 Mo. 270, 49 S.W. 845, 848, 849 (1899). Denial of a continuance for purposes of securing absent witnesses whose purported testimony would not bear directly upon the guilt or innocence of the defendant is not error, State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22, 26 (1936), or where the testimony of absent witnesses is not material, State v. Steele, 280 Mo. 63, 217 S.W. 80 (1919), State v. Woodward, 182 Mo. 391, 81 S.W. 857, 866 (1904).

In this case the trial court did not abuse its discretion in the denial of a continuance to enable defendant to produce witnesses Judnary, Crimens, and Nichols, because their testimony was neither material nor directed to the issue of defendant's guilt or innocence of the crime charged. Defendant was accused of driving, operating, and using a motor vehicle without the permission of the owner. He was observed in the act charged at 2:45 a. m., January 20, 1971, and none of the absent witnesses would have provided defendant with an albi for that act. At best, the absent witnesses would have accounted for defendant's whereabouts at the time the Livingston car was stolen, a charge not laid to defendant. As demonstrated, defendant was guilty of the offense charged and for which he was convicted if he operated the motor vehicle without the owners' permission, no matter who may have stolen it in the first instance. By way of distinction, State v. Wright, 336 Mo. 135, 77 S.W.2d 459 (1934), cited by appellant, involved the erroneous failure to grant a continuance to enable defendant's sick mother to testify he was at home in bed at the time of the murder with which defendant was charged was alleged to have been committed.

Appellant also charges that the court erred in its instruction on credibility on the ground there was no basis for the last paragraph which he characterizes as the "falsus in uno, falsus in omnibus" portion, i. e., "* * * you are * * * instructed that if you believe that any witness has sworn falsely to any material fact in issue, you should reject such false testimony and may reject any or all of such witness's testimony."

Appellant asserts there was no evidence of false swearing; the only basis would seem to be witness Henry's bad reputation as shown by his "nine, ten, eleven or twelve convictions for stealing or possession of narcotic drugs or forgery." He concludes, "If bad character is enough then it would seem that the instruction was properly given. If evidence of false testimony is required, then the Court erred * * *." In support of his contention, appellant cites State v. Abbott, 245 S.W.2d 876 (Mo.1952); State v. Lord, 286 S.W.2d 737 (Mo.1956); Farmers State Bank v. Miller, 26 S.W.2d 863 (Mo.App.1930).

This question will, in all probability, not arise in criminal cases tried after January 1, 1974. Missouri Approved Instructions —Criminal, directed for use beginning January 1, 1974, contain an instruction required to be given in all criminal cases on the believability (credibility) of witnesses, and it does not employ the language quoted in appellant's contention. See MAI—CR 2.01.

It is appropriate for disposition of this appeal to quote State v. Butler, 310 S.W.2d 952, 955–956 [2, 3] (Mo.1958): "Paragraph two, the so-called 'falsus in uno, falsus in omnibus' portion, is based on the established rule that if the jury members believe a witness has committed perjury in the case on trial by wilfully swearing falsely to a material fact, they may for that reason alone reject the remainder of his testimony if they do not otherwise believe it to be truthful. Such fact furnishes them a valid reason for disbelieving everything else the witness may have said. They are not required to refuse to believe it but may do so. State v. Willard, 346 Mo. 773, 142 S.W.2d 1046, 1052; State v. Abbott, Mo.Sup., 245 S.W.2d 876, 881. Instructions of the type represented by paragraph two are generally of little, if any, assistance to juries, and are subject to the criticism that they may be misunderstood, or misapplied. In the past our appellate courts have looked upon them with disfavor, although *as yet* this alone has not resulted in a reversal of the particular case. See discussion, 4 A.L.R.2d 1078; 90 A.L.R. 74. This type of instruction (paragraph two) should not be given unless there is some basis for it, and even where there is such basis, the giving or refusal of the instruction is a matter of discretion of the trial court. It has been held that there is no basis for the instruction ' "unless it is quite evident that material contradictory testimony has been given" * * * or there is something in the case indicating a wilful effort to misrepresent or suppress a material fact' or other valid reason to believe that perjury has been committed. Farmers' State Bank v. Miller, Mo.App., 26 S.W.2d 863, 865, and cases cited. See also, State v. Douglas, 312 Mo. 373, 278 S.W. 1016, 1027.' "

In this case there is evidence from defense witness John Seldin Henry which the trial judge reasonably may have believed suggested an effort by defendant to misrepresent, contradict, or draw attention away from the material facts of the crime, i. e., defendant's operation of the Livingston automobile at 2:45 a. m., without the owner's permission. For example, witness Henry testified that he was with defendant after midnight on the date in question, that defendant was in Henry's car, that he never saw a 1967 Oldsmobile, that he did not see defendant in or about another automobile, that he had known defendant for several years, and "I didn't know he could even drive an automobile. I have never seen him drive an automobile as long as I have known him." He testified also that he took defendant to Southern Kitchen, ten or twelve blocks from Cardinal and Washington, that he was to pick him up at 1:30, that he did not return until "about fifteen, twenty minutes after two," that somebody said he just left. These facts demonstrate there was more than witness Henry's bad character as a basis for the questioned instruction, and such cautionary instruction was neither an abuse of discretion nor reversible error. State v. Butler, supra; State v. Lord, supra. See also West v. St. Louis Public Service Co., 357 S.W.2d 69, 71 (Mo.1962); State v. Wolfskill, 421 S.W.2d 193, 197–198[10] (Mo.1967).

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.